IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA E. WILSEY, | No. C 04-02285 CRB |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| DONALD L. EVANS, Secretary, United States Department of Commerce, | |
| Defendant. | |

Plaintiff, proceeding in pro se, alleges that defendant terminated her employment with the United Census Bureau because of her race (Caucasian) and/or in retaliation for a complaint she made about the treatment of other Caucasian employees. Now pending before the Court is defendant's motion for summary judgment and plaintiff's cross motion. After carefully considering all the evidence in the record, the Court denies plaintiff's motion and grants defendant's motion in part and denies it in part.

**BACKGROUND**

Plaintiff was employed by the Eureka Office of the United States Census Bureau from later summer 1999 until defendant terminated her employment on April 25, 2000, several months before her temporary position was scheduled to end. At all times relevant to her lawsuit, her supervisors were Shawn Adkins and Don Thompson, both Caucasian males. At the time of the termination of her employment, she was working as a Field Operations

Supervisor.

On or around April 22, 2000, Kay Long, a Census Bureau Regional Technician based in Seattle, visited the Eureka Office. During that visit plaintiff complained to Long about four matters: (1) the Office had fired approximately 20 Caucasian census workers because they were not Native American; (2) an employee had submitted a falsified time sheet; (3) the falsification of census documents; and (4) missing census documents. Three days later Adkins and Thompson terminated plaintiff's employment. Their supervisor, the Census Bureau Area Manager Alice Greene, had agreed to the termination. Adkins and Thompson told plaintiff she was fired because she had hired her daughter to work for the Bureau in plaintiff's district. She was later told that she had also used an improper procedure to hire her daughter. Prior to her termination plaintiff had not been disciplined for any work issues; indeed, even after plaintiff's termination Adkins described the quality of plaintiff's work as a Field Operations Supervisor as "outstanding."

Plaintiff subsequently filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). The complaint alleged that defendant terminated plaintiff's employment because of her race and in retaliation for engaging in protected activity. An administrative law judge conducted a hearing on plaintiff's complaint. See 29 C.F.R. § 1614.109. Seven witnesses testified at the hearing and plaintiff proceeded without an attorney. In an opinion issued after the hearing, the ALJ stated that she could not understand why defendant terminated plaintiff's employment. She nonetheless found that the record did not support a finding that defendant had terminated plaintiff's employment because of her Caucasian race. The ALJ also found for defendant on the retaliation claim on the ground that the evidence was insufficient to support a finding that Adkins or Thompson knew of plaintiff's complaint to Long.

Plaintiff subsequently filed this Title VII lawsuit. She again makes two claims. First, that defendant terminated her employment because of her race, and second that she was terminated in retaliation for her complaints to Long. The parties have filed cross-motions for summary judgment on both claims. In her briefs, plaintiff mentions the Whistleblower

2

Protection Act. No such claim is in this lawsuit and the Court will only consider plaintiff's Title VII claims.

## SUMMARY JUDGMENT STANDARD

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (here, defendant) has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). Where the party moving for summary judgment would bear the burden of proof at trial (here, plaintiff), she has the initial burden of producing evidence which would entitle her to a directed verdict if the evidence went uncontroverted at trial. C.A.R. Transp. Brokerage Co., Inc. v. Darden, 213 F.3d 474, 480 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

The Ninth Circuit "has set a high standard for the granting of summary judgment in employment discrimination cases." Schnidrig v. Columbia Machine, Inc., 80 F.3d 1406, 1410 (9th Cir. 1996). Very little evidence is required to survive summary judgment in such a case "because the ultimate question is one that can only be resolved through a 'searching

inquiry'–one that is most appropriately conducted by the factfinder, upon a full record." Id. (internal quotation marks and citation omitted).

## LEGAL STANDARD FOR TITLE VII CLAIMS

Plaintiff's disparate treatment claim, that is, her claim that she was terminated because of her Caucasian race, is governed by the legal framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). This test requires a plaintiff to first establish a prima facie case of intentional discrimination by showing: (1) she belongs to a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) some other circumstance indicates a discriminatory motive, such as similarly situated individuals being treated more favorably. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).

Plaintiff's Title VII retaliation claim is analyzed under a similar framework. Under Title VII, "it is unlawful 'for any employer to discriminate against any of his employees ··· because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Stegall v. Citadel Broadcasting, Co., 350 F.3d 1061, 1065 (9th Cir. 2003) (quoting 42 U.S.C. § 2000e-3 (2000)). To make a prima facie case of retaliation in violation of Title VII, a plaintiff "must demonstrate that '(1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision.'" Id. at 1065-66 (quoting Raad v. Fairbanks North Star Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir. 2003)). "In addition, the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." Raad, 323 F.3d at 1197.

If plaintiff makes a prima facie showing on either of her claims, the burden shifts to defendant to "articulate a legitimate, non-discriminatory reason for the adverse employment action." Stegall, 350 F.3d at 1066 (internal quotation marks and citation omitted). If the

defendant satisfies this burden, the plaintiff "bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." Id. (internal quotation marks and citation omitted).

**DISCUSSION**

**A.   Retaliation**

Plaintiff has satisfied her prima facie burden of showing that defendant terminated her employment because she engaged in activity protected by Title VII.  First, it is undisputed that she complained to Long about the Office having fired approximately 20 Caucasian employees and replaced them with Native Americans.  Defendant, without citation to any authority, baldly asserts that such a complaint is not protected activity.  The law, however, provides that an employee may not be terminated for complaining about perceived discrimination against others if the employee in good faith believes that the employment practice is unlawful.  29 C.F.R. § 1614.101(b); Trent Valley Elec. Ass'n Inc., 41 F.3d 524, 526 (9th Cir. 1994).  Evidence of a plaintiff's sincerity in a claim that discrimination occurred is relevant to determining whether the plaintiff had a "reasonable" belief that discrimination occurred.  Strother v. So. Cal. Permanente Medical Group, 79 F.3d 859, 869 (9th Cir. 1996).

Defendant does not dispute that plaintiff in good faith believed that it was unlawful for the Eureka Office to fire Caucasian employees in order to replace them with Native Americans; indeed, Thompson has stated under oath that plaintiff's concern was not "off base."  Thus, plaintiff has submitted evidence sufficient to show that she engaged in protected activity.

Second, it is undisputed that plaintiff suffered an adverse employment action, namely, defendant's sudden termination of her employment.

Third, plaintiff has submitted evidence sufficient to show a causal link between her complaint to Long and her firing.  Defendant terminated her employment just three days after she complained.  Moreover, defendant did so without warning and even though plaintiff

5

was considered an "outstanding" employee. These circumstances are sufficient to satisfy plaintiff's prima facie burden of showing a causal link. See Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004) (seven week interval between protected activity and adverse employment action sufficient to show causal link).

Finally, plaintiff has met her prima facie burden of making some showing sufficient for a reasonable trier of fact to infer that the persons responsible for her firing, that is Adkins, Thompson and/or Greene,[1] were aware of plaintiff's complaint to Long. Raad, 323 F.3d at 1197. At the administrative hearing Long testified that as a result of plaintiff's complaint, that same day she discussed the firing of the Caucasian employees with Adkins so that he could investigate the matter. Transcript of Administrative Hearing ("HT") 137-38; ALJ Opinion at 12. She also testified that she could not remember whether she had told Adkins that plaintiff had complained to her about the firing of the Caucasian employees, but later in the hearing testified that she had not told him about plaintiff's involvement. HT 137-38, 144. Greene confirmed that everything that Greene or Long may have "heard" about the Eureka Office would have been discussed with the Eureka Office manager, that is Adkins. Nov. 29, 2001 Declaration of Alice Greene at 2. Greene also declared that she had heard that plaintiff was unhappy with the firing of the Caucasian employees, but that she would not have discussed the matter with Adkins or Thompson. Dec. 31, 2003 Declaration of Alice Greene at ¶ 4.

This evidence creates a genuine dispute as to whether Adkins, Thompson and/or Greene were aware that plaintiff had complained to Long. A jury could find that, notwithstanding Long's denial (and Adkins' denial), Long did tell Adkins that it was plaintiff who had brought the matter to her attention. Such a finding is supported by common sense, the proximity of plaintiff's complaint and the decision to terminate her employment, as well

---

[1] Defendant refers to Greene as the decisionmaker for plaintiff's firing. The record, however, demonstrates that Thompson and Adkins made the decision to terminate plaintiff and that Greene relied on their judgment in approving the termination. See HT at 126 (Greene testifying that she did not look at any evidence regarding plaintiff's conduct; instead, "[t]he majority of the decision was based on him and Don's judgment and [she] went along with" their decision).

6

as Greene's testimony that she and Long would discuss everything they had heard about an office with the office manager.

Since plaintiff has satisfied her prima facie burden on her retaliation claim, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for her firing. Defendant has satisfied this burden. It has explained that Adkins and Thompson decided to terminate plaintiff, with Greene's concurrence, because plaintiff violated Office policy by hiring her daughter to work in her direct chain of command; she used an improper procedure to hire her daughter; and she lied about Thompson having authorized the hiring of her daughter.

The ultimate burden, then, is on plaintiff to show that defendant's stated reason for her termination is simply a pretext for firing her because of her protected activity. Plaintiff has submitted evidence sufficient to meet this burden.

First, as defendant concedes, plaintiff disputes that she utilized an improper procedure to hire her daughter, and further asserts that Thompson advised her that plaintiff's daughter could accept the job. Defendant's Motion for Summary Judgment at 3. For purposes of defendant's motion for summary judgment, the Court must accept plaintiff's testimony as true. Plaintiff's testimony is corroborated by the General Declaration of Thompson submitted in November 2001. He does not deny that plaintiff was "very up-front and open, expressing [her] happiness that [she] could finally have [her] daughter selected." General Declaration of Donald R. Thompson at 2. He also declares that when plaintiff mentioned that her daughter had been selected he "might have said, 'well good.'" Id. Moreover, Ronald Bricker, a former Eureka Office employee, corroborated plaintiff's assertion that her daughter was hired through the proper channels. HT 67-68. Further, Saprina Rodriguez, a Field Operations Supervisor at the same time as plaintiff, testified that her understanding of the "nepotism" policy was the same as plaintiff's belief; namely, a family member could work in a supervisor's chain of command provided there was one level of supervision in between. Id. at 157. Rodriguez claims the issue had arisen during a meeting and Thompson

7

and Adkins were "both hazy on what the policy was and we needed enumerators so badly because it was such a massive operation, something along that line. . . . They came to the conclusion that as long as there was a supervisor between us and any family enumerator, that would be fine." HT 159. This evidence disputes Adkins' and Thompson's claim that they fired plaintiff because she violated the Office's nepotism policy.

Second, there is evidence that defendant treated plaintiff different from other similarly situated employees. It is undisputed that several Office employees had close family members working in the Office. Saprina Rodriguez testified that she held the same position as plaintiff at the time of plaintiff's firing: Field Operations Supervisor. Rodriguez testified that her mother and sister worked in her chain of command. HT 157. Thompson told Rodriguez the hiring of her sister and mother in her chain of command was authorized because Rodriguez was not their direct supervisor. Id. 159. After defendant terminated plaintiff's employment, Adkins called Rodriguez and told her she had to fire her mother and sister or else she (Rodriguez) would be fired. Id. at 165-66. Her mother and sister were fired, but her sister was rehired within a week, although she no longer worked in Rodriguez's chain of command. Id. at 167.

Rodriguez was not fired; instead, she was given the option of terminating the employment of her later-hired mother and sister. Plaintiff was not given any option. Defendant terminated her employment without any warning or discussion and allowed her daughter, who had been at work for one day, to continue with the Bureau. This evidence suggests that defendant's explanation for plaintiff's termination was not the real reason or, at least, that there was some additional motivating factor such as her complaint made three days earlier.

Defendant also treated another employee, David Moxley, different from plaintiff. Defendant admits that Moxley had his daughter work in his chain of command. July 14, 2006 Declaration of Donald R. Thompson at ¶ 7. Yet, it is undisputed that Moxley was not fired; instead, he was suspended without pay for some unspecified amount of time. Again,

8

plaintiff–an outstanding employee with no disciplinary record–was not so disciplined. A reasonable trier of fact could find that Moxley and Rodriguez were similarly situated to plaintiff yet defendant chose to fire only plaintiff. Such evidence gives rise to an inference that plaintiff's complaint motivated defendant's decision to fire her.

In sum, the material facts are disputed. Based on those material facts a reasonable trier of fact could find that plaintiff's complaint about the firing of the Caucasian employees motivated defendant's decision to terminate her employment. Accordingly, defendant's motion for summary judgment on the retaliation claim must be denied. Plaintiff's motion must likewise be denied because a reasonable jury could also reach the opposite conclusion and find that plaintiff's complaint played no role in her firing.

**B.     Disparate Treatment**

Plaintiff has satisfied her prima facie burden on her disparate treatment claim. It is undisputed that she was qualified for her position and defendant terminated her employment; thus, she suffered an adverse employment action. It is also undisputed that defendant filled her position with a non-Caucasian; such evidence satisfies her prima facie burden of showing some evidence that her race motivated her termination. See McDonnell Douglas, 411 U.S. at 802.

The burden thus shifts to defendant to articulate a non-discriminatory reason for her firing. Defendant has satisfied this burden with the evidence that it fired plaintiff because Thompson and Adkins believed she had hired her daughter to work in her direct chain of command and had done so through improper procedures.

Thus, as with the retaliation claim, the burden is on plaintiff to demonstrate that defendant's stated reason for her termination is merely a pretext for firing her because she is Caucasian. As previously explained, the above evidence gives rise to an inference that plaintiff was terminated for a reason other than (or in addition to) the reasons proffered by defendant. Plaintiff has nonetheless not met her burden of submitting evidence sufficient to permit a trier of fact to find that defendant terminated her employment because she is

9

Caucasian. The other employees whom plaintiff claims were treated more favorably are also Caucasian, as are Thompson and Adkins, the supervisors most responsible for the decision to end plaintiff's employment.

Defendant's termination of other Caucasian employees so that Native Americans could be hired in their place does not suggest that plaintiff, too, was terminated because of her race. It is undisputed that defendant terminated those employees because the Native Americans would not allow the non-Native Americans on their reservation to conduct the census. Regardless of the legality of the Bureau's conduct, it does not suggest that race motivated defendant's decision to terminate plaintiff's employment. There is no evidence that plaintiff was working on a reservation. Nor does plaintiff have any direct evidence of race discrimination. In short, no reasonable trier of fact could find that defendant terminated plaintiff's employment because she is Caucasian.

## CONCLUSION

For the reasons explained above, plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment on plaintiff's race claim is GRANTED and on plaintiff's retaliation claim is DENIED.

**IT IS SO ORDERED.**

Dated: September 8, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE